UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCO ANTONIO ORTIZ REYES,<br><br>Petitioner,<br><br>v.<br><br>CHRISTOPHER LAROSE, Senior Warden, Otay Mesa Detention Center, et al.,<br><br>Respondents. | Case No.: 25-CV-2938 JLS (VET)<br><br>**ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS**<br><br>(ECF No. 1) |

Presently before the Court is Petitioner Marco Antonio Ortiz Reyes's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Pet.," ECF No. 1). Also before the Court is Respondents Christopher LaRose's (Senior Warden, Otay Mesa Detention Center); Pamela Bondi's (U.S. Attorney General); Kristi Noem's (Secretary, U.S. Department of Homeland Security); and Patrick Divver's (U.S. Immigrations and Customs Field Office Director) (collectively, "Respondents") Return to Habeas Petition ("Ret.," ECF No. 5) and Petitioner's Traverse ("Traverse," ECF No. 6). For the reasons set forth below, the Court **GRANTS IN PART** Petitioner's Petition for Writ of Habeas Corpus.

///
///
///

# BACKGROUND

Petitioner is a forty-one-year-old citizen and national of Mexico currently detained at the Otay Mesa Detention Center. Pet ¶ 9. Petitioner entered the United States on or about January 6, 2001, near Tecate, California, without being admitted or paroled. Ret. at 2. Since then, Petitioner has lived in the United States with his wife, a lawful permanent resident, and his three children, all United States citizens. Pet. ¶ 25. In October 2012, following a conviction for a misdemeanor DUI, Department of Homeland Security ("DHS") detained Petitioner and issued him a Notice to Appear charging him as inadmissible under § 1182(a)(6)(A)(i).[1] *Id.* ¶¶ 25–26; Ret. at 2. DHS then released Petitioner on his own recognizance ("OR") and, later, issued an employment authorization. Pet. ¶¶ 26–27. In October 2015, Petitioner's immigration proceedings were administratively closed. *Id.* ¶ 29. In July 2025, the Immigration Court granted DHS's motion to re-calendar Petitioner's immigration proceedings. *Id.* ¶ 30. On October 10, 2025, DHS directed Petitioner to appear at the Immigration and Customs Enforcement ("ICE") Enforcement and Removal Operations ("ERO") office for a check in where DHS "detained him without explanation" and sent him to the Otay Mesa Detention Center. *Id.* ¶ 31. On October 31, 2025, Petitioner appeared before an Immigration Judge ("IJ") for a bond hearing. Ret. at 2. The IJ denied Petitioner's bond, "finding a lack of jurisdiction pursuant to *Matter of Yajure Hurtado*, 29 I&N Dec. 216, 229 (BIA 2025)." *Id.*

Petitioner has "family ties, work authorization, and many years of living in the United States without incident after his OR release." Traverse at 2. During the time Petitioner was released on OR, Petitioner complied with all terms of his OR release, hired an attorney, attended all his court hearings, applied for cancellation of his removal and asylum, and had "no problems with the law." *Id.* at 5. Petitioner alleges that there were

---

[1] 8 U.S.C. § 1182(a)(6)(A)(i) designates as inadmissible, and therefore "ineligible to receive visas and ineligible to be admitted to the United States," illegal entrants who are present "without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General."

no changes in circumstances or law to justify his re-detention and that he was given no warning or reason for his re-detention. *Id.* Respondents do not point to any changed circumstances. *See generally* Ret. Petitioner challenges his re-detention without first being provided notice or a hearing and his continued detention. Pet. ¶ 1.

On October 30, 2025, Petitioner filed this Petition for Writ of Habeas Corpus arguing his summary revocation of his OR release violates the Immigration and Nationality Act, the Due Process Clause of the Fifth Amendment, and the Administrative Procedure Act (APA). Pet. at 7–8. Specifically, Petitioner requests the Court (1) assume jurisdiction over this matter; (2) declare that Petitioner's detention violates the Due Process Clause, the INA, and the APA; (3) grant the instant petition and release Petitioner, or alternatively, grant an individualized bond hearing; (4) issue an order prohibiting Respondents from continuing to detain Petitioner on the basis of 8 U.S.C. § 1225(b)(2); and (5) award Petitioner attorney's fees and costs under the Equal Access to Justice Act and on any other basis justified under law. *Id.*

## LEGAL STANDARD

A federal prisoner challenging the execution of his or her sentence, rather than the legality of the sentence itself, may file a petition for writ of habeas corpus in the district of his confinement pursuant to 28 U.S.C. § 2241. *See* 28 U.S.C. § 2241(a). The sole judicial body able to review challenges to final orders of deportation, exclusion, or removal is the court of appeals. *See generally* 8 U.S.C. § 1252; *see also Alvarez–Barajas v. Gonzales*, 418 F.3d 1050, 1052 (9th Cir. 2005) (citing REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231, § 106(a)). However, for claims challenging ancillary or collateral issues arising independently from the removal process—for example, a claim of indefinite detention—federal habeas corpus jurisdiction remains in the district court. *Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006), *abrogated on other grounds by Jennings v. Rodriguez*, 583 U.S. 281 (2018); *Alvarez v. Sessions*, 338 F. Supp. 3d 1042, 1048–49 (N.D. Cal. 2018) (citations omitted).

/ / /

# DISCUSSION

Respondents first argue that this Court lacks jurisdiction under 8 U.S.C. § 1225(g) and § 1225 (b)(9), and that Petitioner has failed to exhaust his administrative remedies. Ret. at 7–10. Respondents then argue, if the Court finds jurisdiction and waives exhaustion, that Petitioner's claims fail on the merits because Petitioner is subject to mandatory detention under 8 U.S.C. § 1225. *Id.* at 10–14. Petitioner argues that the summary revocation of his OR release and continued detention violates Due Process and the APA, and that he is not subject to mandatory detention under § 1225. *See generally* Pet.

## I. Jurisdiction

Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). Respondents claim that Petitioner's claims necessarily arise from the decision or action by the Attorney General to commence removal proceedings and adjudicate cases. Ret. at 7–8. The Court disagrees.

Section 1252(g) should be read "narrowly" as to apply "only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Ibarra-Perez v. United States*, No. 24-631, 2025 WL 2461663, at *6 (9th Cir. Aug. 27, 2025) (quoting *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 482, 487 (1999)). Section 1252(g) "does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders." *Id.* at *7. Section 1252(g) does not bar due process claims. *Walters v. Reno*, 145 F.3d 1032, 1052–53 (9th Cir. 1998) (finding that the petitioners' objective was not to review the merits of their proceeding, but rather "to enforce their constitutional rights to due process in the context of those proceedings").

Here, Petitioner does not challenge the decision to commence removal proceedings or any act to adjudicate or execute a removal order. Traverse at 3. Rather, Petitioner is

challenging "whether he is subject to mandatory re-detention without any change in circumstances or explanation after the DHS released him on his own recognizance." *Id.* Petitioner is enforcing his "constitutional rights to due process in the context of the removal proceedings—*not* the legitimacy of the removal proceedings or any removal order." *Garcia v. Noem*, No. 25-CV-2180-DMS-MMP, 2025 WL 2549431, at *4 (S.D. Cal. Sept. 3, 2025). Therefore, § 1252(g) does not strip the Court of jurisdiction. *See, e.g.*, *Navarro Sanchez v. Larose et al.*, 25-cv-2396 JES (MMP), 2025 WL 2770629, at *2 (S.D. Cal. Sept. 26, 2025) (finding the Court had jurisdiction in a similar matter); *Noori v. Larose et al.*, 25-cv-1824 GPC (MSB), 2025 WL 2800149, at *7–8 (S.D. Cal. Oct. 1, 2025) (same); *Rodriguez v. Kaiser*, No, 25-cv-1111-KES-SAB (HC), 2025 WL 2855193, at *4 (E.D. Cal. Oct. 8, 2025) (same).

Section 1252(b)(9) provides that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, *arising from any action taken or proceeding brought to remove an alien from the United States* under this subchapter shall be available only in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9) (emphasis added). Respondents argue that the Court lacks jurisdiction under § 1252(b)(9) because "Petitioner challenges the government's decision to detain and action to detain, which arises from DHS's decision to commence removal proceedings, and is thus an 'action taken . . . to remove [him/her] from the United States.'" Ret. at 10 (quoting 8 U.S.C. § 1252(b)(9)). Again, the Court disagrees.

Section 1252(b)(9) "has built-in limits, specifically, claims that are independent of or collateral to the removal process do not fall within the scope" of § 1252(b)(9). *Gonzalez v. United States Immigration and Customs Enforcement*, 975 F.3d 788, 810 (9th Cir. 2020) (citing *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1032 (9th Cir. 2016) (internal quotation marks omitted)). "[C]laims challenging the legality of detention pursuant to an immigration detainer are independent of the removal process." *Id.*; *see also Garcia*, 2025 WL 2549431, at *3–4; *Nielson v. Preap*, 586 U.S. 392, 402 (2019) (quoting *Jennings*, 583 U.S. at 294) (finding § 1252(b)(9) did not strip the court of jurisdiction because the

petitioners were "not asking for review of an order of removal; they [were] not challenging the decision to detain them in the first place or to seek removal (as opposed to decision to deny them bond hearings); and they [were] not even challenging any part of the process by which their removability w[ould] be determined").

Here, as discussed above, Petitioner is not challenging the Department of Homeland Security's decision to commence removal proceedings or to adjudicate removability. *See* Traverse at 3. Petitioner is instead challenging his re-detention without notice or an opportunity to be heard and his continued detention without a bond hearing. *Id.*; *see also Rodriguez*, 2025 WL 2855193, at *4 (finding jurisdiction under similar facts). Therefore, § 1252(b)(9) also does not strip the Court of jurisdiction.

## II. Exhaustion

"Exhaustion can be either statutorily or judicially required." *Acevedo-Carranza v. Ashcroft*, 371 F.3d 539, 541 (9th Cir. 2004). While 28 U.S.C. § 2241 "does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus," the Ninth Circuit "require[s], as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by*, *Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). Prudential exhaustion may be required if: "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (citing *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003)). "[A] court may waive the prudential exhaustion requirement if 'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.'" *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)).

The Court, following other courts in this District, finds that exhaustion would be futile because the Board of Immigration Appeals is obligated to apply the binding precedent of *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025) to find that detention is mandatory under 8 U.S.C. § 1225(b)(2). *See, e.g.*, *Garcia*, 2025 WL 2549431, at *4–5; *Valdovinos v. Noem*, No. 25-CV-2439 TWR (KSC), ECF No. 9 (S.D. Cal. Sept. 25, 2025). Therefore, the Court concludes that exhausting administrative remedies would be futile.

### III. Merits

#### A. Due Process

Petitioner argues that his re-detention without any explanation or change in circumstances violates the Due Process Clause. Pet. ¶ 46. The Court agrees.

The Fifth Amendment guarantees that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (9th Cir. 2001). "[I]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). The Due Process Clause generally "requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, No. 25-cv-5632-PCP, 2025 WL 2084921, at *3 (N.D. Cal. July 25, 2025) (citations omitted). Although the initial decision to detain or release an individual may be within the government's discretion, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[] to live up to the . . . conditions [of release].'" *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). "Thus, even when ICE has the initial discretion to detain or release a noncitizen pending

1 | removal proceedings, after that individual is released from custody [he] has a protected
2 | liberty interest in remaining out of custody." *Pinchi*, 2025 WL 2084921, at *3 (citing
3 | *Romero v. Kaiser*, No. 22-cv-20508, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022)).

Respondents contend that as an "applicant for admission" under 8 U.S.C. § 1225, Petitioner is subject to mandatory detention and therefore his alleged statutory and constitutional violations fail. Ret. at 10. The Court disagrees. *See Gonzalez v. Bostock*, No. 25-cv-1404-JNW-GJL, 2025 WL 2841574, at *3 (W.D. Wash. Oct. 7, 2025) (finding petitioner not subject to § 1225(b)(2) where petitioner was not arrested upon arrival at the border, had resided in the United States for eight years, and was arrested at a routine ICE check-in). Petitioner was released on his own recognizance in 2012. Pet. ¶ 26. Petitioner is not a newly arrived noncitizen seeking admission at the border, as Petitioner has been in the United States since 2001. Ret. at 2. Petitioner was determined to not be a danger to the community or a flight risk and has attended all his court hearings. Pet. ¶ 44. He is married to a lawful permanent resident and has three children, ages 21, 14, and 11. *Id.* ¶ 25. Petitioner has obtained a work permit, has had no problems with the law, and has complied with all terms of his OR release. Traverse at 5.

Petitioner is not merely an "applicant for admission" at the border with minimal due process rights; Petitioner has a protected liberty interest in remaining out of custody. *See, e.g.*, *Pinchi*, 2025 WL 2084921, at *4 ("[Petitioner's] release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community, and [Petitioner] has a strong interest in remaining at liberty unless she no longer meets those criteria."); *Noori*, 2025 WL 2800149, at *10 ("Petitioner is not an 'arriving' noncitizen but one that has [been] present in our country for over a year. This substantial amount of time indicates he is afforded the Fifth Amendment's guaranteed due process before removal."); *Matute v. Wofford*, No. 25-cv-1206-KES-SKO (HC), 2025 WL 2817795, at *5 (E.D. Cal. Oct. 3, 2025) (finding petitioner had a protected liberty interest in his release); *Rodriguez*, 2025 WL 2855193, at *5–6 (finding a protected liberty interest in petitioner's OR release); *Alegria Palma v. LaRose et*

*al.*, No. 25-cv-1942 BJC (MMP), ECF No. 14, at *6 (S.D. Cal. Aug. 11, 2025) ("The core issue implicates a significant liberty interest: continued freedom after release on own recognizance.").

As Petitioner has a protected liberty interest, the Due Process Clause requires procedural protections before he can be deprived of that interest. *See Matthews v. Eldridge*, 424 U.S. 319, 335 (1976). To determine which procedures are constitutionally sufficient to satisfy the Due Process Clause, the Court must apply the *Matthews* factors. *See Matthews*, 424 U.S. at 335. Courts must consider: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.*

The Court finds that all three factors support a finding that the Government's revocation of Petitioner's release without notification, reasoning, or an opportunity to be heard, denied Petitioner of his due process rights. First, as discussed above, Petitioner has a significant liberty interest in remaining out of custody pursuant to his OR release. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690. Petitioner has an interest in remaining with his family, continuing to work and live subject to the conditions of his OR release as he has for the last thirteen years. *See Morrissey*, 408 U.S. 471 at 482 ("Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life.").

Second, the risk of an erroneous deprivation of such interest is high as Petitioner was re-detained without providing him a reason or an opportunity to be heard. Pet. ¶ 46. Since DHS's initial determination that Petitioner should be paroled because he posed no danger to the community and was not a flight risk, there is no evidence that these findings have

changed. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1760 (N.D. Cal. 2017) ("Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."). "Once a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings. Rather, the federal agents must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk. . . ." *Saravia*, 280 F. Supp. 3d at 1760. Respondents, failing to address Petitioner's Due Process argument in their response, do not point to any material circumstances that have changed that would warrant his re-detention. *See generally* Ret. "Where, as here, 'the petitioner has not received any bond or custody hearing,' 'the risk of an erroneous deprivation of liberty is high' because neither the government nor [Petitioner] has had an opportunity to determine whether there is any valid basis for [his] detention." *Pinchi*, 2025 WL 2084921, at *5 (quoting *Singh v. Andrews*, No. 25-cv-801-KES-SKO (HC), 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025)) (cleaned up).

Third, the Government's interest in detaining Petitioner without notice, reasoning, and a hearing is "low." *See Pinchi*, 2025 WL 2084921, at *5; *Matute*, 2025 WL 2817795, at *6; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019) ("If the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). Respondents fail to point to any burdens on the Government if it were to have provided proper notice, reasoning, and a pre-deprivation hearing. *See generally* Ret.

Therefore, Respondents' ongoing detention of Petitioner without notice, showing of changed circumstances, or an opportunity to respond violates Petitioner's due process rights. *See, e.g.*, *Pinchi*, 2025 WL 2084921, at *4–6 (granting a preliminary injunction where petitioner was released on her own recognizance and re-detained without reason or notice); *Espinoza v. Kaiser*, No. 25-cv-1101 JLT SKO, 2025 WL 2675785, at *10–12 (E.D. Cal. Sept. 18, 2025) (same); *Alegria Palma*, No. 25-cv-1942 BJC (MMP), ECF No. 14, at *6 (S.D. Cal. Aug. 11, 2025) (same); *Valdez v. Joyce*, No. 25 Civ. 4627 (GBD), 2025 WL

1707737, at *4–5 (S.D.N.Y. June 18, 2025) (granting habeas petition on due process grounds when petitioner was released on his own recognizance and re-detained without notice, a hearing, or evidence of changed circumstances); *Gonzalez*, 2025 WL 2841574, at *7–9 (same); *Y.M.M. v. Wamsley*, No. 25-cv-2075, 2025 WL 3101782, at *2–3 (W.D. Wash. Nov. 6, 2025) (same).

The Court need not address Petitioner's claim arising under the APA or the INA because the Petition can be resolved on due process grounds.

### b. Attorney's Fees

Petitioner has requested costs and attorney's fees in this action pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. Pet. at 9. The EAJA provides in part:

> A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney . . . representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed. The party shall also allege that the position of the United States was not substantially justified. Whether or not the position of the United States was substantially justified shall be determined on the basis of the record . . . which is made in the civil action for which fees and other expenses are sought.

28 U.S.C. § 2412(d)(1)(B).

The Court will consider an application requesting reasonable fees and costs under the EAJA that is filed within thirty (30) days of the judgment.

## CONCLUSION

Based on the foregoing, the Court **GRANTS** in part Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1), and **ORDERS** Respondents to immediately release Petitioner from custody. The Court **ORDERS**, prior to any re-detention of Petitioner, that Petitioner is entitled to notice of the reasons of re-detention and a hearing before a neutral decision maker to determine whether detention is warranted. The Government shall bear the burden

11

25-CV-2938 JLS (VET)

of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight.[2] The Parties are **ORDERED** to file a Joint Status Report by November 21, 2025, confirming that Petitioner has been released. Lastly, Petitioner's attorney is directed to submit an attorney fee application and corresponding billing records within thirty (30) days of this Order, and Respondents are instructed to file any opposition within fourteen (14) days of Petitioner's attorney fee application.

**IT IS SO ORDERED.**

Dated: November 13, 2025

Hon. Janis L. Sammartino
United States District Judge

---

[2] This relief has been granted in similar matters. *See, e.g.*, *Matute*, 2025 WL 2817795, at *8; *Pinchi*, 2025 WL 2084921, at *5; *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1097 (E.D. Cal. 2025); *Martinez Hernandez v. Andrews*, No. 25-CV-1035 JLT HBK, 2025 WL 2495767, at *14 (E.D. Cal. Aug. 28, 2025).